## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AF HOLDINGS, LLC, | )   Case No. 2:12-cv-13436-AJT |
| | )   Hon. Arthur Tarnow |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| RAY DAWKINS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

JOHNATHAN W. TAPPAN (P-72195)          JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                              Attorney for Defendant
2549 Somerset Blvd. 102                         2684 West Eleven Mile Road
Troy, MI 48084                                      Berkley, MI 48072
(248) 622-0206                                      (248) 591-9291

---

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S NEGLIGENCE CLAIM

Defendants, RAY DAWKINS, ask this Court to grant their motion for dismissal Plaintiff's Negligence Claim under Fed. R. Civ. P. 12(b)(6) based on the failure to state a claim upon which relief may be granted since the matter of copyright infringement preemption.


Dated:  September 18, 2012                    s/ John T. Hermann
                                                      JOHN T. HERMANN (P52858)
                                                      Attorney for Defendant
                                                      2684 West Eleven Mile Road
                                                      Berkley, MI 48072
                                                      (248) 591-9291

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| AF HOLDINGS, LLC, | )   Case No. 2:12-cv-13436-AJT |
| | )   Hon. Arthur Tarnow |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| RAY DAWKINS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

JOHNATHAN W. TAPPAN (P-72195)          JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                              Attorney for Defendant
2549 Somerset Blvd. 102                         2684 West Eleven Mile Road
Troy, MI 48084                                       Berkley, MI 48072
(248) 622-0206                                       (248) 591-9291

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S NEGLIGENCE CLAIM

Dated:  September 18, 2012                    s/ John T. Hermann
                                                              JOHN T. HERMANN (P52858)
                                                              Attorney for Defendant
                                                              2684 West Eleven Mile Road
                                                              Berkley, MI 48072
                                                              (248) 591-9291

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.................................................................................... iii

STATEMENT OF ISSUES PRESENTED.................................................................. v

STATEMENT OFCONTROLLING AUTHORITY .................................................. vi

I.     FACTUAL BACKGROUND ........................................................................ 1

II.    STANDARD OF REVIEW ........................................................................... 3

III.   LAW AND ARGUMENT .............................................................................. 3

      A.   Plaintiff's Negligence Action Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted .............................. 3

            1.   Plaintiff's Negligence Claim Is Within The Subject Matter of Copyright ............................................................... 5

            2.   Plaintiff's  Negligence Claim Seeks To Protect Rights That Are Identical To The § 106 Exclusive Remedy .......................... 6

            3.   Plaintiff's Negligence Claim Is Preemted by the Doctrines of Conflict and Field Preemption .................................... 9

      B.   Plaintiff's Negligence Action Is Barred By Immunity Under § 230 Of The Communications Decency Act ................................... 10

      C.   Plaintiff Has Not Plead A "Special Duty" Giving Rise To Defendant's Purported Obligation to Secure His Internet Access .......... 15

IV.    CONCLUSION ........................................................................................... 17

# <u>INDEX OF AUTHORITIES</u>

<u>AF Holding, v. Does 1-1,140</u> (Case No. 11-c-01274 United States District Court for the Central District of Illinois ................................................................................................ 1

<u>Barnes</u> v. <u>Yahoo! Inc</u>. 2005 WL 30055602  (D. Or. Nov. 8, 2005)  ............................................. 13

<u>Ben Ezra, Weinstein, & Co.,</u> v. <u>Am. Online. Inc</u>. 206 F.3d 980 (10th Cir. 2000) ...................... 13

<u>Blumenthal</u> v. <u>Drudge</u>, 992 F. Supp. 44 (Dist. D.C. 1998)  .................................................. 14

<u>Bridgeport Music, Inc.</u> v. <u>11C Music</u>, 154 F.Supp.2d 1330 (M.D. Tenn., 200)............................ 8

<u>Capital Cities Cable, Inc</u>. v. <u>Crisp</u>, 467 U.S. 691 (1984) ................................................. 9

<u>Carafano</u> v. <u>Metrosplash</u>, 339 F.3d 1119 (9th Cir. 2003)  ................................................ 13

<u>Davidson</u> v. <u>City of Westminster</u>, 649 P.2d 894 (Cal. 1982)  ............................................. 16, 17

<u>Delfino</u> v. <u>Agilent Technologies, Inc</u>., 52 Cal.3d 376 (6th App. Dist., 2006)............ 11, 12, 13, 15

<u>Del Madera Properties</u> v. <u>Rhodes and Gardner, Inc</u>., 820 F.2d 973 (9th Cir. 1987)  .................... 7

<u>Dielsi</u> v. <u>Falk</u>, 916 F. Supp. 985 (C.D. Cal. 1996) ...................................................... 7

<u>Doe</u> v. <u>America Online, Inc</u>., 783 So.2d 1010 (Fla. 2001)  ............................................... 13

<u>Doe</u> v. <u>MySpace</u>, 528 F.3d 413 (5th Cir. 2008) ........................................................ 13

<u>Drum Major Music</u> v. <u>Young Money Entertainment</u>,
2002 WL 423350 (S.D.N.Y. Feb. 7, 2012) ............................................................... 8

<u>Felix the Cat Productions</u> v. <u>New Line Cinema</u>,
2000 WL 770481 (C.D. Cal. April 28, 2000) ........................................................... 7

<u>Firoozye</u> v. <u>Earthlink Network</u>, 153 F.Supp.2d 1151 (N.D. Cal. 2001)  ................................ 4, 5

<u>Gary Friedrich Enterprises, L.L.C.</u> v. <u>Marvel Enterprises, Inc.</u>,
713 F.Supp.2d 215 (S.D.N.Y. 2010) ................................................................... 8

<u>Gentry</u> v. <u>eBay, Inc</u>,. 99 Cal. App. 4th 816 (4th District, 2002)  ..................................... 11

<u>Green</u> v. <u>Am. Online</u>, 318 F.3d 465, 472 (3d. Cir. 2003)  ............................................... 13

<u>In Re BitTorrent Litigation</u>, No. 2:11-cv-03999 (E.D.N.Y. May 1, 2012) ................................ 1

<u>Jane Doe One</u> v. <u>Oliver</u>, 755 A.2d 1000, (Conn. Super. Ct. 2000) ....................................... 14

<u>Kathleen R.</u> v. <u>City of Livermore</u>, 104 Cal.Rptr.2d 772 (1st Dist. 2001) ...................... 12, 13, 14

<u>Marvullo</u> v. <u>Gruner + Jahr AG & Co</u>., 2001 WL 40772, (S.D.N.Y. Jan. 17, 2001) ...................... 8

<u>Parker</u> v. <u>Google, Inc</u>. 422 F.Supp.2d 492, (E.D. Pa. 2006) ........................................... 14

<u>Rosciszewski</u> v. <u>Arete Associates,</u> 1 F.3d 225, 232 (4th Cir. 1993)  ................................... 4

<u>Smith</u> v. <u>Intercosmos Media Group, Inc</u>., 2002 WL 31844907 (E.D. La. Dec. 17, 2002)  .......... 11

<u>Watermark Publishers</u> v. <u>High Tech. Sys</u>.,
1997 U.S. Dist. LEXIS 22512 (S.D. Cal. Jun 18, 1997) ................................................. 8

Weirum v. RKO General, Inc. 15 Cal.3d 40, 49 (Cal. 1975) ...................................................... 16

Zeran v. America Online, Inc. 129 F.3d 327 (4th Cir. 1998) ...................................................... 7

## **COURT RULES**

Fed R. Civ. P. 12(b)(6) ................................................................................................... 3, 9, 17

## **STATUTES**

17 U.S.C. §102 ................................................................................................................... 5, 8

17 U.S.C. §106 ....................................................................................................................... 6

17 U.S.C. §301 ............................................................................................................... 4, 5, 8

17 U.S.C. §301(a) .................................................................................................................. 4

17 U.S.C. 1201(a)(1) ......................................................................................................... 9,10

47 U.S.C. §230 ............................................................................................... 9, 10, 14, 15

47 U.S.C. §230(b) ................................................................................................................ 11

47 U.S.C. §230(f)(2) ...................................................................................................... 11, 12

47 U.S.C. §230(f)(2) ............................................................................................................ 15

## **LEGISLATIVE MATERIALS**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976),
reprinted in 1976 U.S.C.C.A.N. 5659 .............................................................................. 4, 5

## **SECONDARY SOURCES**

Restatement (Second) Torts, §314 & 314a ................................................................. 16

## STATEMENT OF ISSUES PRESENTED

I.  DOES PLAINTIFF'S CLAIM FOR NEGLIEGNCE IN FAILING TO SECURE HIS INTERNET ROUTER TO PREVENT THE INADVERANT DOWNLOAD AND/OR EXCHANGE OF COPRYIGHTED MATERIAL STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED?

Plaintiff Answers:              No.
Defendant Answers:          Yes.
Court Should Answer:        No.

II.  IS PLAINTIFF'S CLAIM FOR NEGLIEGNCE BARED BY IMMUNITY UNDER § 230 OF THE COMMUNICATIONS DECENCY ACT?

Plaintiff Answers:              Yes.
Defendant Answers:          No.
Court Should Answer:        Yes.

III.  HAS PLAINTIFF PLED A "SPECIAL RELATIONSIP" GIVING RISE TO DEFENDANT'S PURPOTED DUTY TO SECURE HIS INTERNET ACCESS?

Plaintiff Answers:              No.
Defendant Answers:          Yes.
Court Should Answer:        No.

## STATEMENT OF CONTROLLING AUTHORITY

In accordance with L.R. 7.1(c)(2), Defendants state that the following are the most controlling and/or most appropriate authorities relevant to deciding the issues raised in its motion are contained in the following provisions of the Copyright Act as set forth in 17 U.S.C. 301(a).

I.      FACTUAL BACKGROUND

This case is one of hundreds of similar actions filed throughout the country in which Plaintiff has attempted offer alternative legal theories for the alleged download and/or exchange of copyrighted material over open internet access systems or Wi-Fi systems. Wi-Fi makes it possible for users to connect to the public internet using the wireless technology used in most laptops. If users are able to connect to a typical home or business Wi-Fi system, they connect to the court Wi-Fi. Wi-Fi internet access is available through both secure network systems and unsecure network system. Open Wi-Fi systems are utilized in a number of settings to promote open access to the internet and are widely available at community libraries, coffee shops, restaurants, entertainment venues, and other public places.

In its complaint, Plaintiff asserts that Mr. Dawkins may be liable under a negligence theory for failing to secure his internet access account preventing the use of such account for an illegal purpose – namely the unlawful download and/or exchange of copyrighted material identified as a video file entitled "Sexual Obsessions"   (Plaintiff's Complaint ¶¶ 3, 63) In furtherance of its negligence claim, Plaintiff allege that Mr. Dawkins now has a duty, which extends to the producers of pornographic materials and Plaintiff herein, to monitor and secure their connection in such a way that no court user can connect to the network to commit a copyright infringement. This is a hefty burden, especially given the fact that numerous business, libraries, and even court locations offer unsecured Wi-Fi access that can be used by anyone, including those who wish to commit copyright infringement.

Plaintiff's theory lacks any legal precedent, is wholly unsupported by existing law and, as one judge has noted, "flies in the face of common sense."[1] Plaintiff's negligence theory is,

---

[1] *In Re BitTorrent Litigation*, No. 2:11-cv-03999 (E.D.N.Y. May 1, 2012)("While Plaintiffs claim that they can

instead, the latest incarnation of the copyright trolling phenomenon that has swept through district courts across the country. Certain features have become hallmarks of this brand of litigation. First, Plaintiff files a single suit seeking the identities of hundreds of unrelated individuals based on a generalized allegation that each has "shared" one of the plaintiff's copyrighted works – usually a pornographic film with an obviously pornographic title, as here.

Next, the plaintiff seeks an ex parte order for "early discovery" from the court, in the form of ISP subscriber names, addresses, telephone numbers, etc. of the ISP subscriber associated with particular IP addresses. This is usually accomplished (as it was with regard to Defendant herein), by assuring the court in the original action that a) the joinder of hundreds of other unrelated individual of individuals is proper, and b) that Plaintiff intends to amend the complaint to include each; and c) that the requested expedited discovery will be sufficient to "fully identify" the defendants and serve each with process. Indeed, Plaintiff in the present matter has remained true to form.

The name and identity of the Mr. Dawkins (as the internet account holder for a specified IP address for the requested date and/or time) was originally obtained in connection with  a proceeding  in  another forum - *AF Holdings v. Does 1-1,140* (Case No. 11-c-01274-RBW for the United States District Court for the Central District of Illinois) In the original matter which was filed for the purpose of obtained Defendant's identity, Plaintiff represented to the court that "Through the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully "identify"…each P2P network user suspected of violating Plaintiff's copyrights."

After obtaining the identity of each ISP subscriber, Plaintiff's out of state counsel

---

amend their complaints to allege negligence against the owner of a Wi-Fi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, this assertion flies in the face of common sense.")

proceeded to contact Mr. Dawkins knowing that he was represented by counsel threatening to sue him as the internet account holder for $150,000 if they fail to pay. However, as the complaint makes clear, Plaintiff has no idea whether a particular subscriber has actually committed copyright infringement. This puts them in a very tricky position, since actually suing people for infringement in this situation might violate Rule 11, as well as exposing the Plaintiff to liability for costs and attorney fees under Copyright Act §505 when the defendant ultimately prevails.

In response to this predicament, Plaintiff has attempted to invent a new area of law which is contrary to the field occupied by the Copyright Act. As part of its inventive but misguided legal strategy, Plaintiff accuse the account-holder of negligence – stating that they failed to act reasonably in order to prevent his/her internet account from being improperly utilized for the illegal purpose of downloading and/or exchanging adult content material in which they allegedly maintain an ownership interest. For the reasons outlined more fully below, Defendant respectfully requests that this court dismiss Plaintiff's ill-considered negligence action.

II.     STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a motion seeking judgment for "failure to state a claim upon which relief can be granted" in the pleadings. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion must be filed prior to the submission of the first responsive pleading; this motion is used to test the sufficiency of the complaint as a matter of law. Fed. R. Civ. P. 12(b).

III.    LAW AND ARGUMENT

A.     PLAINTIFF'S CLAIM FOR NEGLIEGNCE IN FAILING TO SECURE HIS INTERNET ROUTER TO PREVENT THE INADVERANT DOWNLOAD AND/OR EXCHANGE OF COPRYIGHTED MATERIAL FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

§ 301 of the Copyright act provides that

3

> "On and after January 1, 1978, **all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright** as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, **are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State**."

17 U.S.C. 301(a)(Emphasis Added) Copyright Act preemption is extremely broad. Other districts have recognized that

> While the language of section 301 is quite clear, Congress also reinforced its desire to sweep broadly in a report accompanying the legislation: 'The declaration … in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection.' H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746 (quoted in Rosciszewski v. Arete Associates, 1 F.3d 225, 232 (4th Cir. 1993). Thus, Congress has clearly indicated that state-law claims which come within **the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law … should be litigated only as federal copyright claims**. Id.

Firoozye v. Earthlink Network, 153 F.Supp.2d 1151, 1121-22 (N.D. Cal. 2001) (emphasis added).

The House report goes on to note that "preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the scope of exclusive rights given the work under the bill is narrower than the scope of common law rights in the work might have been. H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659. The message is unmistakable: the rights granted by the Copyright Act must be vindicated within the confines of the Copyright Act and its jurisprudence.

The test for copyright preemption asks two essential questions. First, do the claims fall

4

"within the subject matter of copyright law?" <u>Firoozye</u> 153 F. Supp. 2d at 1121-22. Second, do the claims seek to "protect rights equivalent to any of the exclusive rights within the scope of federal copyright law?" <u>Id</u>. If the answer to these questions is yes, then Plaintiff's claims "should be litigated only as federal copyright claims." <u>Id.</u> In the instant case, the answer to each question is obviously affirmative, and Plaintiff's negligence cause of action against Mr. Dawkins is therefore preempted by §301.

1.   <u>Plaintiff's Claim is Within the Subject Matter of Copyright</u>

The first prong of the copyright preemption test asks whether the Plaintiff's claim is within the subject matter of copyright. There can be no doubt that Plaintiff's claim herein, which is based on the alleged unauthorized reproduction and distribution of Plaintiff's copyrighted work, is within the subject matter of copyright. The Copyright Act describes the "Subject matter of copyright" as follows. "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in a tangible medium of expression…Works of authorship include the following categories…(6) motion pictures and other audiovisual work." 17 U.S.C. §102. As the House Committee report notes,

> "As long as a work fits within one of the general subject matter categories of sections 102 and 103 [sections 102 and 103 of this title], the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain."

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5748.

Thus, the first test for copyright preemption is satisfied whether or not the individual work at issue is deemed copyrightable, and is satisfied solely by virtue of the fact that the work is a motion picture, falling within the subject matter of copyright. The work that forms the basis of

5

Plaintiff's claim in the instant case qualifies as a motion picture, and thus is within the subject matter of copyright. The first prong of the preemption test is satisfied. In fact, Plaintiff's implicitly recognize this fact as their complaint alleges that the subject matter of the dispute involves a video that "Is currently registered in the United States Copyright Office (Copyright No. PA 00001725120). *See* Exhibit A to Complaint)." (Plaintiff's Complaint ¶ 19)

2.    Plaintiff Seeks to Protect Rights that are Identical to the §106 Exclusive Rights

There can be no doubt that Plaintiff's negligence claim against Josh Hatfield seeks to protect rights that are equivalent to the section 106 rights of reproduction, distribution, etc. Plaintiff's complaint makes it abundantly clear the negligence claim against Defendant seeks to protect Plaintiff's copyrighted work from unauthorized copying and sharing. This is precisely the role of copyright law. Indeed, Plaintiff cannot manage to formulate any statement of its right to relief without reference to its "exclusive rights" under the copyright act or the violation of those rights by "copying." See, e.g. Plaintiff's complaint at ¶27 ("unauthorized copying of Plaintiff's video"); ¶38 ("copying and sharing of Plaintiff's video" and "interfered with Plaintiff's exclusive rights in the copyrighted work"); ¶ 38 (same); ¶66 ("copying and sharing"); ¶ 49 ("downloading and sharing the movie"); ¶ 33, 51("infringements"); ¶55 ("distribution and sharing Plaintiff's Video. Video," and ¶55 "engaged in a concerted toritious action to reproduce and distribute Plaintiff's Video.

Plaintiff's own focus on its "exclusive rights" is instructive. 17 U.S.C. §106 is entitled "Exclusive Rights in Copyrighted Works," and lays out the familiar exclusive rights, including the right to distribute and the right to reproduce. These are the rights that trigger copyright preemption. These are **precisely** the rights that Plaintiff claims were violated as a result of Mr. Dawkins's alleged negligence, and Plaintiff is unable to formulate any version of the claim

6

without reference to its "exclusive rights." Moreover, the act that triggers liability to Plaintiff (under Plaintiff's theory), is the unauthorized copying and sharing of Plaintiff's work by a third party. This is exactly the situation that the twin doctrines of vicarious and contributory copyright liability has been developed to address.

The Ninth Circuit has adopted the "extra element" test to help determine whether the state law claim "seeks to protect rights which are qualitatively different from copyright rights. The state claim must have an 'extra element' which changes the nature of the action" in order to survive preemption Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987). Many courts have addressed this issue and determined that negligence claims do not add the required "extra element" that qualitatively changes the nature of the action, and thus are preempted. As the Central District of California recognized,

> Because the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim. Moreover, **re-characterization of the claim as one of 'negligence' does not add a legally cognizable additional element** because a general claim for copyright infringement is fundamentally one founded on strict liability. The alteration of the required mental state does not add an 'additional element'… Plaintiff's negligence claim is preempted by federal copyright law.

Dielsi v. Falk, 916 F. Supp. 985, 992-993 (C.D. Cal. 1996)(emphasis added and internal citations omitted). The court in Dielsi recognized that simply rephrasing a claim does not change the essential elements of the claim.

In addition to the court in Dielsi, a number of other courts have found that negligence causes of action are preempted by copyright law and that the alteration of the required mental state does not add a legally cognizable extra element. See, e.g. Felix the Cat Productions v. New Line Cinema, 2000 WL 770481 (C.D. Cal. April 28, 2000)("Re-characterizing Plaintiff's copyright claim as one for negligence does not add an additional element"); Watermark

7

Publishers v. High Tech. Sys., 1997 U.S. Dist. LEXIS 22512 at  15 (S.D. Cal. Jun 18, 1997) (preempting Plaintiff's negligence claim, and noting "The only possible basis for a duty to protect another from copyright infringement – if such a duty can exist – is in copyright law; thus the alleged existence of a duty is not an 'extra element'"); Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., 713 F.Supp.2d 215 (S.D.N.Y. 2010) (negligence claim under either New York or Illinois law was properly preempted by Copyright Act §301); Bridgeport Music, Inc. v. 11C Music, et. al. 154 F.Supp.2d 1330 (M.D. Tenn., 2001)(negligence claim preempted by Copyright Act despite elements of 'duty' and 'breach'.); Marvullo v. Gruner + Jahr AG & Co., 2001 WL 40772, at 7 (S.D.N.Y. Jan. 17, 2001)(photographer's negligence claim simply restates copyright infringement claim); Drum Major Music v. Young Money Entertainment, 2002 WL 423350 (S.D.N.Y. Feb. 7, 2012)(negligence claim preempted by Copyright Act).

Moreover, Plaintiff seems to conclude that Defendant Hatfield jointly and severally liable for *statutory damages and attorney's fees*, which are only available to a Plaintiff under the Copyright Act. Indeed, Plaintiff's prayer for relief seeks "an order that Defendant Dawkins is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of Defendant's negligence, as well as judgment "against Defendants" awarding attorney's fees and costs. (Plaintiffs Prayer for Relief) Plaintiff would thus like to collect statutory damages from the. Copyright Act from Defendant based on the "copying and sharing" of Plaintiff's works. Based on the foregoing, it is clear that Plaintiff's negligence claim against Defendant Dawkins is preempted by Copyright Act §301. The work at issue is a motion picture – certainly within the subject matter of copyright as defined by §102. In addition, Plaintiff seeks to protect rights that are identical to the rights protected by Copyright Law and Plaintiff is incapable, in fact, of asserting any right to relief without reference to these exclusive rights. Because Plaintiff's sole

claim against Defendant Dawkins is preempted, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to posit a cognizable legal theory entitling Plaintiff to relief.

3.    Plaintiff's Claims are Also Preempted by the Doctrines of Conflict and Field Preemption

In addition to the obvious statutory preemption via §301, Plaintiff's claims are also preempted under the non-statutory doctrines of federal preemption. A state law cause of action is preempted not only when so decreed by specific statute, like §301. A state law cause of action is also preempted when the Constitution or other federal legislation evidences an intent to fully occupy the field in question, or when there is a fundamental incompatibility between federal and state law. Thus, when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", it is preempted. See Capital Cities Cable, Inc. v. Crisp 467 U.S. 691 (1984).

In the instant case, Plaintiff seeks to hold an ISP subscriber liable for providing internet access to an individual that subsequently used that connection to infringe Plaintiff's copyright. However, holding an information conduit liable for the content of the information transmitted represents a fundamental conflict between Plaintiff's state law claim and the existing federal legislation, including the Digital Millennium Copyright Act ("DMCA") and the Copyright Act, and the Communications Decency Act ("CDA") The DMCA, CDA and the Copyright Act all include carefully crafted limitations of liability for mere intermediaries in the information transmission process, like Defendant here. The Copyright Act has created a substantial body of case law discussing the requirements for imposing secondary liability on a third-party that has not directly infringed a copyright. This regime does not authorize the imposition of liability for "negligent infringement." Moreover, as described further below, the CDA also has broad

immunity provisions designed to prevent the imposition of tort liability based on the communications of a third party.

The DMCA likewise includes several statutory "safe harbors," that are designed to shield third party intermediaries from copyright liability resulting from merely transmitting information. Taken together, these demonstrate Congress' desire to occupy the field with regard to third party liability for the electronic communications of another – communications that invariably traverse state lines and defy state regulations. As such, state regulation over this field is prohibited. Plaintiff's proposed cause of action directly conflicts with the copyright principles of secondary liability and the broad policies of an open internet underlying both the CDA and the DMCA. Thus, Plaintiff's cause of action for negligence is also preempted under the doctrines of conflict preemption and field preemption.

> B.   PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY CDA §230 IMMUNITY AND SHOULD BE DISMISSED FOR FAILUR TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Assuming, arguendo, that Plaintiff's cause of action for negligence could survive preemption, Plaintiff's claims are nonetheless barred by Communications Decency Act immunity under 47 U.S.C. §230. Specifically, §230(c)(1) provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230(c)(1). The CDA goes on to state that "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. 230 (e)(3).

A fundamental policy underlying §230 immunity was "to promote the continued development of the Internet and other interactive computer services and other interactive media," and to preserve the vibrant and competitive free market that presently exists for the Internet and

other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §230(b)(1 & 2). As the 4th Circuit recognized, the CDA was designed to "avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery. <u>Zeran</u> v. <u>America Online, Inc</u>. 129 F.3d 327, 330-331 (4th Cir. 1998). Although CDA immunity does not provide immunity from liability under intellectual property laws, Plaintiff's negligence claim *must not* be a claim under intellectual property laws if it is to survive preemption. Courts have construed "immunity broadly, in the spirit of the CDA's stated purpose of promoting rather than impeding technology and Internet use." <u>Smith</u> v. <u>Intercosmos Media Group, Inc</u>. 2002 WL 31844907 at 3 (E.D. La. Dec. 17, 2002).

Courts must undertake a three-part inquiry to determine whether a defendant is eligible for CDA immunity. They are "(1) the defendant [is] a provider or user of an interactive computer service; (2) the cause of action treat[s] the defendant as a publisher or speaker of information; and (3) the information at issue [is] provided by another information content provider." <u>Delfino</u> v. <u>Agilent Technologies, Inc.</u>, 52 Cal.3d 376, 389 (6th Cir. 2006), quoting <u>Gentry</u> v. <u>eBay, Inc</u>. 99 Cal. App. 4th 816, 830 (4th District, 2002).

As noted above, courts must first determine whether the defendant qualifies as a "provider…of an interactive computer service." Although this phrasing conjures images of traditional internet service providers, (i.e. Comcast or Time Warner), the CDA defines the term in a way that leaves no doubt that it would apply to the allegations against Defendant Dawkins. Specifically, §230(f)(2) defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users

to a computer server, **including specifically a service or system that provides access to the Internet…"** 47 U.S.C. 230(f)(2)(emphasis added).

Defendant Dawkins is accused of providing internet access to an individual that ultimately pirated Plaintiff's film. This act, according to Plaintiff, is the sole basis of Defendant Dawkins's liability. The act of providing internet access to a third party, however, is **exactly** the type of activity that qualifies one for CDA immunity as the provider of an interactive computer service and it is specifically included in the definition cited above. Indeed, the California Court of Appeals examined almost precisely the same issue in Delfino v. Agilent Technologies, Inc., 52 Cal.Rptr.3d 376 (2006).

The Plaintiff in Delfino sought to impose liability on Agilent Technologies based on Agilent's provision of internet access to a particular employee, who used that access to send allegedly threatening and defamatory emails. Plaintiff sought to impose liability on Agilent based on a theory of negligent infliction of emotional distress, based on allegations very similar to those made by Plaintiff in the present case. Specifically, Plaintiff claimed that Agilent "was informed and knew that [the employee] was using its computer system" to commit torts against the Plaintiff. Agilent claimed immunity under the CDA and the trial court confirmed. On appeal, the 6th Appellate district confirmed the grant of immunity and noted that "Agilent clearly meets the definition of that term under section 230(f)(2), in that it "provides or enables computer access by multiple users." Id. at 390. Another California case, Kathleen R. v. City of Livermore, held that a public libraries provision of computers and internet access qualified them for CDA protection as the provider of an interactive computer service. See 104 Cal.Rptr.2d 772 (1st Dist. 2001).

The conduct here that purportedly gives rise to liability is virtually identical to the conduct of the defendants in <u>Delfino</u> and <u>Kathleen R.</u>, namely, the provision of internet access to a third party. As the courts in <u>Delfino</u> and <u>Kathleen R.</u> concluded, and as the language of §230 makes clear, a defendant whose liability is premised upon his ownership or control of "**a service or system that provides access to the Internet,**" should properly qualify as the provider of an interactive computer service, and satisfies the first requirement for CDA immunity.

The second requirement for CDA immunity to apply is that the "the cause of action treat[s] the defendant as a publisher or speaker of information." <u>Delfino</u> at 389. The California Supreme Court has held that the CDA makes no attempt to exclude pre-CDA "distributors" of information, and one who was characterized as a passive distributor is likewise entitled to immunity. <u>Barrett</u> v. <u>Rosenthal</u>, 51 Cal.Rptr.3d 55 (2006).Moreover, although this element is couched in terms that are familiar to defamation suits, "it is clear that immunity under section 230 is not so limited" *Delfino* at 390. Numerous courts have applied CDA immunity to defendants accused of a variety of torts beyond defamation, including nuisance, premises liability, misappropriation of right of publicity, and, relevantly, negligent failure to control a third party's online conduct. See, e.g. <u>Kathleen R.</u>, <u>supra</u>; <u>Carafano</u> <u>v. Metrosplash.com, Inc.</u>, 339 F.3d 1119 (9th Cir. 2003); and <u>Doe</u> v. <u>America Online, Inc.</u>, 783 So.2d 1010 (Fla. 2001).

Indeed, several courts have specifically held that CDA immunity bars a Plaintiff's claim for negligence, like the one alleged herein. See, e.g. <u>Doe</u> v. <u>MySpace</u>, 528 F.3d 413 (5th Cir. defendant immune from liability for negligence); <u>Carafano</u> v. <u>Metrosplash</u>, 339 F.3d 1119 (9th Cir. 2003)(same); <u>Barnes</u> v. <u>Yahoo! Inc</u>. 2005 WL 30055602 at 4 (D. Or. Nov. 8, 2005)(same); <u>Ben Ezra, Weinstein, & Co.</u>, v. <u>Am. Online, Inc</u>. 206 F.3d 980, 986 (10th Cir. 2000)(CDA bars claims for negligence and defamation); <u>Green</u> v. <u>Am. Online</u>, 318 F.3d 465, 472 (3d. Cir.

13

2003)(CDA bars claims for negligent failure to police network); <u>Jane Doe One</u> v. <u>Oliver</u>, 755 A.2d 1000, 1002-04 (Conn. Super. Ct. 2000)(CDA bars claims for negligence, inter alia); <u>Parker v. Google</u>, Inc. 422 F.Supp.2d 492, 500-501 (E.D. Pa. 2006)(CDA bars claims for invasion of privacy, negligence, and defamation).

The case of <u>Kathleen R.</u>, noted above, is again instructive. In that case, Plaintiff attempted to hold the City of Livermore liable for allowing a twelve-year-old to access and download sexually explicit images from an internet connection in the public library. <u>Kathleen R.</u> 104 Cal.2d at 773. Notably, the Plaintiff alleged that the minor went to the library and downloaded sexually explicit photos onto a floppy disk that he brought to the library. <u>Id.</u> The minor then allegedly took the floppy disk to another location where he printed the pictures. The state court of appeals had no trouble determining that Plaintiff was attempting to hold the library responsible as the speaker or publisher of the explicit materials by virtue of the library's role as a conduit for internet service. The court held that §230 immunizes "interactive computer service providers from liability for mere failure to 'restrict access to offensive material disseminated through their medium.'" <u>Id.</u> at 780, quoting <u>Blumenthal</u> v. <u>Drudge</u>, 992 F. Supp. 44, 49 (Dist. D.C. 1998).

The allegations against the defendant herein are almost identical to those in <u>Kathleen R.</u> In each Plaintiff seeks to impose liability on the basis of the defendant's provision of internet access to a third party or third parties. In each, the Defendant is accused only of being a conduit for objectionable material that was downloaded from a connection offered by the Defendant. In each case, the defendant's liability is premised on a third party's use of the defendant's internet access to copy pornographic materials to a storage device for later use. And, like the City of Livermore in <u>Kathleen R.</u>, the defendant here is entitled to CDA immunity. The final prong of

the test for CDA immunity asks whether "the information at issue [is] provided by another information content provider." <u>Delfino</u> at 389. The CDA defines an information content provider as the "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet…" 47 USC §203(f)(3).

In the present case, it is clear that Defendant Dawkins is not the creator or entity responsible for the creation or development of the film at issue. There is clearly no allegation in the present case that Defendant Dawkins is the creator or developer of the information at issue – Plaintiff's copyrighted work. As such, Defendant Dawkins easily satisfies the third prong of the preemption test. Plaintiff herein explicitly seeks to impose liability on Defendant Dawkins based on the Defendant's alleged provision of internet access to an unidentified individual that infringed the Plaintiff's copyright. The provision of internet access to a third party, however, makes Defendant Dawkins the provider of an interactive computer service and entitles him to immunity under the CDA. This immunity extends to all attempts to hold the Defendant liable for the allegedly tortious information supplied by a third-party. Thus, in addition to being preempted as described above, Plaintiff's claims are barred by Defendant's CDA §230 immunity.

C.    PLAINTIFF HAS NOT PLED A "SPECIAL RELATIONSHIP" GIVING RISE TO DEFENDANT'S PURPORTED DUTY TO SECURE HIS INTERNET ACCESS

The elements of a cause of action for negligence in Michigan (as elsewhere) include duty, breach, proximate cause, and damages. The threshold element of the existence of duty is a question of law to be resolved by the court. Plaintiff's alleges that Defendant Dawkins owed Plaintiff a duty to secure his internet connection to prevent infringement of Plaintiff's copyrights. The entirety of Plaintiff's allegations involves Defendant's failure to take particular steps –

allegations of non-feasance.  (Plaintiff's Complaint - at ¶63 "failed to take basic and reasonable steps;" ¶64 "failed to monitor;" ¶66 "failure to secure;"); ¶68 "allowed").

The California Supreme Court has recognized a critical distinction between one who is accused of non-feasance, rather than active misfeasance. As explained in <u>Weirum</u> v. <u>RKO General, Inc</u>., "misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e. defendant has created the risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention." 15 Cal.3d 40, 49 (Cal.1975). A defendant has no duty in situations of "non-feasance" unless a "special relationship" exists which would give rise to such a duty. As recognized by California courts and the Restatement (Second) of Torts, "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts §314 (1965). Indeed, a defendant only has a duty to take actions to protect a third party when some "special relationship" exists between the Defendant and the injured party. §314(a) discusses these special relationships, which include common carriers, innkeepers, possessors of land in certain circumstances, and one who takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protect. Restatement (Second) of Torts, §314(a). None of these even remotely apply to the present claims.

In <u>Davidson</u> v. <u>City of Westminster</u>, 649 P.2d 894 (1982) the California Supreme Court endorsed this position in a case involving a police officer's duty, noting that "absence of duty is a particularly useful and conceptually more satisfactory rationale [for dismissal of the action] where, absent any special relationship between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance." The <u>Davidson</u> Court went on to state that:

16

"As a general rule, one owes no duty to control the conduct of another, or to warn those endangered by such conduct. Such a duty may arise, however, if (a) a special relationship exists between the actor and the third person who imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives the other a right to protection." Id. at 203 (internal citations omitted).

Defendant Dawkins, an ordinary citizen with an internet connection, to protect from copyright infringement committed by an unrelated third party. Plaintiff in the instant case has not identified any specific conduct by which Defendant Dawkins created a risk of peril. Indeed, Plaintiff's action is based on generic claims that Defendant Dawkins failed to protect the Plaintiff from harm. Because Plaintiff's claim is based on allegations of nonfeasance, Plaintiff must plead a special relationship giving rise to Defendant Dawkins's duty to protect Plaintiff from harm. Plaintiff here has not alleged any special relationship that would give rise to a duty to prevent injury to Plaintiff's copyrights. Moreover, examining the facts alleged, it seems impossible that Plaintiff will, in fact, be able to plead such existence. As such, Plaintiff has failed to allege a sufficient duty to survive dismissal under Rule 12(b)(6).

IV.    CONCLUSION

WHEREFORE, Defendants RAY DAWKINS requests that this Court to grant their motion to dismiss Count V of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: September 18, 2012                      s/ John T. Hermann
                                              _____
                                              JOHN T. HERMANN (P-52858)
                                              Counsel for Defendant
                                              2684 West Eleven Mile
                                              Berkley, MI 48072
                                              (248) 591-9291

17

**<u>CERTIFICATE OF ELECTRONIC SERVICE</u>**

I herby certify that I electronically filed the foregoing paper with the Clerk of the Court with the ECF system, which will send notification of each filing to the following:

Johnathan W. Tappan, Esq.

Dated: September 18, 2012

s/ John T. Hermann
JOHN T. HERMANN (P-52858)
Counsel for Defendant
2684 West Eleven Mile
Berkley, MI 48072
(248) 591-9291